Hillsborough-southern judicial district
No. 2009-828

DEAN J. WATERFIELD

v.

MEREDITH CORPORATION & a.

Submitted: January 6, 2011
Opinion Issued: April 14, 2011

Randy A. Britton, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), on the brief, for the plaintiff.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*James P. Harris* and *Daniel K. Fink* on the brief), for the defendants.

CONBOY, J. The plaintiff, Dean J. Waterfield, appeals an order of the Superior Court (*Barry,* J.) granting summary judgment in favor of the defendants, Meredith Corporation, John Doe Anchorperson(s), and John Doe On-Site Reporter. We affirm in part, reverse in part, and remand.

The trial court found or the record supports the following facts. In March 2001, the plaintiff married Stephanie Waterfield. The couple lived in Sterling, Connecticut. In September of that year, Ms. Waterfield died. At that time, the plaintiff was incarcerated in Connecticut. After his release, he was appointed administrator of his wife's estate by a Connecticut probate court. As a consequence of his management of the estate, however, he was subsequently removed as administrator and charged with various crimes.

On August 8, 2003, the plaintiff was arrested in Nashua and soon after extradited to Connecticut. On August 24, 2003, WSFB-TV, a Connecticut television station owned by the Meredith Corporation, an Iowa corporation, ran a news story about the plaintiff's handling of his wife's estate. At that time, the plaintiff was again incarcerated in Connecticut. Nearly three years later, on August 21, 2006, the plaintiff filed suit in superior court alleging, among other things, that the story defamed him.

The defendants moved for summary judgment on two grounds: (1) that the plaintiff's defamation claim is foreclosed because a Connecticut probate court found the contents of the news story to be substantially true; and (2)

that the plaintiff's action is barred by Connecticut's two-year statute of limitations. The plaintiff, in response, argued that the Connecticut probate court's ruling is not a final, valid judgment for purposes of res judicata or collateral estoppel, and that the action is timely because New Hampshire's three-year statute of limitations is controlling.

The trial court concluded that the plaintiff was not a resident of New Hampshire at the time he filed suit and had in fact "maintained the New Hampshire address for the sole purpose of filing this suit because the statute of limitations had expired in the other potential jurisdictions." Further, it found that the plaintiff's cause of action did not arise in this state because the broadcast's television signal did not reach New Hampshire. Applying the choice-of-law factors set forth in *Clark v. Clark*, 107 N.H. 351, 353-55 (1966), and *Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 13 (1988), the trial court determined that Connecticut's limitations period, Conn. Gen. Stat. § 52-597 (2011), should apply. Accordingly, the trial court ruled that the plaintiff's claim was untimely and granted the defendants' motion for summary judgment. It did not reach the issue of whether the defamation action was barred by res judicata or collateral estoppel.

The plaintiff raises sixteen issues in his notice of appeal. Many are essentially rephrasings of the central question of whether the trial court properly applied *Keeton* in concluding that the Connecticut statute of limitations barred his claim. On this issue, the plaintiff argues that the trial court erred in finding that he was not domiciled in New Hampshire at the time he filed suit and that the television signal did not reach New Hampshire.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III (2010). In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* "[T]he adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue for trial." RSA 491:8-a, IV (2010). We review the trial court's application of the law to the facts *de novo*. *Big League Entm't*, 149 N.H. at 482.

In New Hampshire, "[p]ersonal actions for slander or libel, unless otherwise provided by law, may be brought only within 3 years of the time the cause of action accrued." RSA 508:4, II (2010). As the writ in this case was filed almost three years after the airing of the allegedly defamatory television broadcast, if Connecticut's two-year statute of limitations applies, the suit is barred as untimely.

■ When New Hampshire is the forum for a suit in which one or more other states also have an interest, we treat potential conflicts of law as follows: we first decide whether a relevant law is substantive or procedural; if it is substantive, we determine whether it actually conflicts with the laws of another interested state and, if so, we then conduct an analysis based upon five choice-of-law influencing considerations; if it is procedural, we generally apply our own law. *Keeton*, 131 N.H. at 13-14.

■ In *Keeton*, we noted that we generally treat statutes of limitations as procedural statutes and accordingly apply our own law. *Id.* at 14. We explained that "in any case in which either party is a New Hampshire resident or the cause of action arose in this State," our limitations period applies "without appeal to our choice-influencing considerations." *Id.* at 15. But we also recognized that "statutes of limitations do differ from other procedural rules," and did not address whether we would apply our limitations period, without a choice-of-law analysis, where none of the parties is a New Hampshire resident and the cause of action did not arise in this state. *Id.* at 14; *see also Smith v. Morbark Industries, Inc.*, 733 F. Supp. 484, 486 (D.N.H. 1990) ("the New Hampshire Supreme Court left open the possibility that the statute of limitations question could be analyzed with reference to . . . choice-of-law analysis in the appropriate case").

We turn first to the threshold questions of whether the plaintiff's cause of action arose in New Hampshire and whether at least one of the parties was a resident of New Hampshire at the relevant time. As to whether the cause of action arose in New Hampshire, the plaintiff does not allege that the broadcast was, in fact, received and understood by any individual in this state. Rather, he argues that if he has proved that a receivable signal reached the state, "it is presumed that someone in New Hampshire saw [the broadcast]." The plaintiff further asserts that he has demonstrated "undeniable scientific proof" that the signal strength of the defendants' broadcast reached New Hampshire. This "proof" apparently stems from his representative's "work calculating [signal] contour lines across the New England [a]rea from the WFSB-TV [s]tation" and background as "a

licensed engineer with a[n] undergraduate degree in Weapons Systems (Mechanical) Engineering from the United States Military Academy at West Point."

■■ Publication requires more than a showing that a receivable signal was transmitted. Publication is an essential element of defamation and requires that the alleged defamation must be communicated to and *understood* by an individual. *See* 50 AM. JUR. 2D *Libel* §§ 220, 228 (2006). In his reply brief, the plaintiff cites several cases that he alleges allow for a presumption as to the issue of publication if the communication was made through newspapers, radio, or television. However, he does not cite, and we are not aware of, any New Hampshire case recognizing such a presumption, and under the circumstances of this case, we decline to do so now.

■ Further, to the extent the plaintiff alleges that the assertions of his representative contained in his motions for reconsideration constitute "scientific proof," expert witness testimony would be required on the subject. *See Laramie v. Stone*, 160 N.H. 419, 427 (2010) ("Expert testimony is required when the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson."); RSA 516:29-a (2007) ("A witness shall not be allowed to offer expert testimony unless the court finds: (a) Such testimony is based upon sufficient facts or data; (b) Such testimony is the product of reliable principles and methods; and (c) The witness has applied the principles and methods reliably to the facts of the case."). There is no evidence in the record to support a conclusion that the plaintiff's representative is qualified as an expert or that his assertions satisfy the requirements for admissible expert testimony. Therefore, we conclude that the plaintiff has not carried his burden to show that there is a genuine issue of fact regarding the publication of the alleged defamation in New Hampshire. RSA 491:8-a, IV.

The plaintiff also argues that the case arose in New Hampshire because he suffered "emotional distress, mental anguish, and continued embarrass-ment" in this state. This argument was not raised in his notice of appeal and is therefore waived. *See State v. Belyea*, 160 N.H. 298, 309 (2010); SUP. CT. R. 16(3)(b). Thus, we affirm the trial court's conclusion that the cause of action did not arise in New Hampshire.

As to the parties' residency, it is undisputed that none of the defendants is a resident of New Hampshire. The plaintiff therefore focuses on his residency and argues that the issue is a question of fact which a trial court is not permitted to resolve on summary judgment. He also argues that the trial court erred in considering his residency at the time of the filing of the writ, instead of his residency at the time of the broadcast. He asserts that he was a New Hampshire resident at the time of the broadcast even though

he was incarcerated in Connecticut, because he lived in New Hampshire immediately prior to his August 8, 2003 arrest and subsequent extradition.

 We hold first that the issue of domicile is a mixed question of law and fact, *see Meléndez-García v. Sánchez*, 629 F.3d 25, 40-41 (1st Cir. 2010); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986); *Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 270 (N.D.N.Y. 2008), which may be resolved by the trial court at the summary judgment stage. *See Thrifty Oil Co. v. Bank of America Nat.*, 322 F.3d 1039, 1046 (9th Cir. 2003). This is not inconsistent with our decision in *Foss v. Foss*, 58 N.H. 283, 284 (1878), cited by the plaintiff, in which we held, "The circumstances stated in the case are evidence from which the domicil[e] can be found, upon the well settled principles applicable to the subject, and the fact must be determined at the trial term." The passage referred to by the plaintiff, "question of domicil[e] is one of fact," is part of the reporter's preface and not part of the opinion. *See State v. Lake Winnipesaukee Resort*, 159 N.H. 42, 47 (2009) (calling into question the precedential value of *Town of Seabrook v. Vachon Management*, 144 N.H. 660 (2000), which had erroneously relied upon a preliminary section of *State v. Company*, 49 N.H. 240 (1870)).

 Next we address whether the trial court erred by looking to the plaintiff's residency at the time the writ was filed. Although we have not had the opportunity to rule on this issue, we are persuaded that the controlling time is the date the cause of action arose. "It is well settled in tort cases that for the purpose of determining domiciliary in choice-of-law analyses the relevant consideration is the domiciliary of the plaintiff at the time of the accident." *Roll v. Tracor, Inc.*, 140 F. Supp. 2d 1073, 1080 n.5 (D. Nev. 2001); *see also Summers v. Interstate Tractor and Equipment Co.*, 466 F.2d 42, 48 n.3 (9th Cir. 1972); *Wheeler v. Standard Tool & Manufacturing Co.*, 359 F. Supp. 298, 301 (S.D.N.Y. 1973) (post-accident change of domicile by a plaintiff will not enter into resolution of choice-of-law issue), *aff'd. per curiam*, 497 F.2d 897 (2d Cir. 1974). *See generally* RESTATEMENT (SECOND) OF CONFLICT OF LAWS, Introductory Note, ch. 7, at 414 (1971). Thus, we reverse the trial court on this issue, and remand for further proceedings consistent with this opinion. In considering the plaintiff's residence for choice-of-law purposes, the controlling date is the date of the allegedly defamatory broadcast in August 2003.

We note that the defendants argue that the plaintiff should not have the benefit of his alleged residency in New Hampshire immediately prior to his arrest in New Hampshire on August 8, 2003, because he was a fugitive from Connecticut at that time. We have not yet addressed this issue, although other courts have adopted such a rule for purposes of diversity jurisdiction. *See Lloyd v. Loeffler*, 694 F.2d 489, 490 (7th Cir. 1982) ("Probably the last

domicile of the fugitive before he fled should be his domicile for diversity purposes."); *Faretra v. Keith*, 2005 WL 1307708, at *1 (D. Mass. 2005) ("A fugitive's last domicile before flight is his domicile for determining whether diversity jurisdiction exists."). Given that, on appeal, the parties addressed this issue only in passing and that the trial court based its decision on plaintiff's residency at the time of the filing of the writ, we decline to address this issue.

■ On remand, should the trial court determine that the plaintiff was a New Hampshire resident at the time of the alleged defamation, our limitations period will apply and no choice-of-law analysis need be made. Should the trial court determine that the plaintiff was not a New Hampshire resident at the time of the alleged defamation, the issue we left open in *Keeton* emerges, and we now hold that under such circumstances, our customary balancing test applies. Thus, the court should determine which state's statute of limitations applies by weighing the five choice influencing considerations: (1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the states in the federal system; (3) simplification of the judicial task; (4) advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law. *Keeton*, 131 N.H. at 14; *Clark*, 107 N.H. at 353-55; *LaBounty v. American Insurance Co.*, 122 N.H. 738, 741 (1982).

We note that the trial court here did conduct such an analysis and that the plaintiff does not offer any argument that its analysis was flawed. He argues only that the trial court should not have conducted it at all.

The plaintiff presses several other arguments contesting the trial court's summary judgment order, including arguments regarding the merits of his defamation claim, arguments which recast his cause of action as including claims for negligence and invasion of privacy, arguments that the defendants waived their ability to challenge his asserted New Hampshire residence, and arguments relating to his efforts to litigate entitlement to the assets of his deceased wife's estate. We conclude that these arguments either were not preserved below, *Quirk v. Town of New Boston*, 140 N.H. 124, 128 (1995), not developed sufficiently to warrant our review, *In the Matter of Aube*, 158 N.H. 459, 466 (2009), or are, under the circumstances of this case, without merit, and do not warrant further discussion, *Vogel v. Vogel*, 137 N.H. 321, 322 (1993). Further, any issues raised in the notice of appeal, but not briefed, are deemed waived. *In re Estate of King*, 149 N.H. 226, 230 (2003).

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.