J-S12031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2860 EDA 2019 |

Appeal from the Order Entered October 2, 2019
In the Court of Common Pleas of Monroe County Juvenile Division at
No(s): CP-45-DP-0000108-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: C.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2861 EDA 2019 |

Appeal from the Order Entered October 2, 2019
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s): No. 48 O.C.A. 2018

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED APRIL 17, 2020**

Appellant, J.O. ("Mother"), appeals from the order entered October 2, 2019, at Docket Number 48 O.C.A. 2018 ("No. 48-18") that terminated her parental rights to her child, C.A. ("Child"), born 2016, and from the order entered that same day in the related dependency action, Docket Number CP-

_____

[*] Retired Senior Judge assigned to the Superior Court.

45-DP-0000108-2016 ("No. 108-16") that continued Child's dependency and placement in a pre-adoptive foster home. After careful review, we quash both appeals.

Monroe County Children and Youth Service ("CYS") had been involved with this family prior to Child's birth. In July 2011, CYS --

> received a referral that Mother's home was deplorable, replete with urine and feces all over the floor, and that Child's brother, A.O., who was 10 [years old] at the time, was not receiving proper nourishment. . . . [O]n May 9, 2013, A.O. was adjudicated dependent and ultimately removed from the home. . . . Unfortunately, despite two more years of efforts, Mother was not able to remedy the conditions that caused A.O. to come into care. . . . Accordingly, on November 2, 2015, after four years of [CYS] involvement, dependency was terminated with legal and physical custody of A.O. being granted to his guardian through a Subsidized Permanent Legal Custodian arrangement.

Trial Court Opinion, filed November 26, 2019, at 2-3.

Child first came to CYS's attention when he was three months old – less than a year after A.O.'s dependency ended. CYS "received a referral that Mother had been incarcerated for non-payment of support for A.O., and Child's Father, who had been indicated by CYS for sexual abuse was acting as Child's caretaker." *Id.* at 3. In September 2016, "Child was adjudicated dependent and placed with his paternal great aunt"; "[a]s in A.O.'s case, the deplorable condition of Mother's home was [also] a substantial reason why Child was adjudicated dependent and placed in foster care." *Id.* at 3, 10. CYS established goals for reunification, including Mother obtaining sanitary and stable housing and completing parenting classes, and put in place "[s]ubstantial services . . . in an attempt to help" Mother achieve her goals.

*Id.* at 3-4. "Throughout the case, three month review hearings were conducted." *Id.* at 4.

On April 2, 2018, believing that Mother had failed to complete most of her objectives, CYS filed a petition requesting that Child's permanency goal be changed from reunification to adoption. The trial court held a hearing on the petition on May 22, 2018, but never explicitly stated during the hearing that it was granting CYS's petition. *See generally* N.T., 5/22/2018. A written permanency review order ("PRO") was entered the next day but provided contradictory information, as follows:

> **CURRENT PERMANENT PLACEMENT GOAL**
>
> The current placement goal for the child is return to parent or guardian.
>
> **CONCURRENT PLACEMENT PLAN**
>
> The concurrent placement plan for the child is Adoption. . . .
>
> **PERMANENT PLACEMENT - Change of Goal**
>
> The Court Orders, the new permanent placement goal hereby determined to be Adoption.

PRO, 5/23/2018, at 1-2.

On July 11, 2018, CYS initiated No. 48-18 by filing a petition to terminate Mother's parental rights.

Meanwhile, the trial court scheduled another permanency review hearing in No. 108-16 for August 22, 2018. On August 17, 2018, the court continued the hearing until October 17, 2018.

Following the hearing on October 17, 2018, the trial court entered a written PRO. Under the heading "Current Permanent Placement Goal," the PRO stated: "The current placement goal for the child is Adoption." PRO, 10/17/2018, at 1. This PRO is the first one to list a goal of adoption under the "Current Permanent Placement Goal" heading.

That same day, Mother filed a notice of appeal from No. 108-16. In it, Mother stated that she was appealing from the "order . . . given on Aug. 18 2018[.]" However, there was no order entered on August 18, 2018, and the order dated August 17, 2018, merely granted a continuance.

This appeal was assigned Docket Number 3136 EDA 2018, and, on March 18, 2019, Mother, who had been represented by counsel, filed a motion with this Court to proceed *pro se*. On March 25, 2019, this Court denied Mother's motion without prejudice to seek the requested relief with the trial court.

On April 12, 2019, pursuant to both No. 108-16 and No. 48-18, the trial court held a hearing on Mother's motion to represent herself, during which the trial court engaged in the following colloquy with Mother:

**THE COURT:** So then [Mother], do you understand that you have a right to an attorney in both of those cases?

[**MOTHER**]: Yes. . . .

**THE COURT:** How far did you go in school?

[**MOTHER**]: High school senior.

**THE COURT:** So you graduated?

[**MOTHER**]: Yes.

**THE COURT:** Do you understand that if I allow you to represent yourself even though you are a layperson not an attorney you would still be bound and required to follow all of the court rules that apply in Pennsylvania?

[**MOTHER**]: Yes. . . .

**THE COURT:** Do you also understand that there would be briefs due in the appeal or appeals?

[**MOTHER**]: Yes. . . .

**THE COURT:** When someone represents themselves they get cut no special breaks. I'm trying to keep this very simple. And so if there is a rule that you miss or if you fail to file something on time or if you do not make an objection where an attorney might nobody steps in to help you; not in this [c]ourt, not in the Appellate Courts, not at the Supreme Court if you get there. Do you understand that?

[**MOTHER**]: Yes I do.

**THE COURT:** That you're held to the same standard, the same rules, etc., as an attorney and if you make a mistake, to use again a common term, it would be on you. Do you understand that?

[**MOTHER**]: Yes.

**THE COURT:** So knowing all that is it your desire to represent yourself in both -- let's take them one at a time; in the dependency case both here in this [c]ourt and on appeal in two appeals?

[**MOTHER**]: Yes.

**THE COURT:** And then you did not include I do not believe in your filings a request to represent yourself in the termination of parental rights case however since I'm going to ask, as I told you before, everybody to provide that information and argument to me and because you've expressed today you want to represent yourself in all matters I want to take care of that today as well if that's okay with you.

[**MOTHER**]: Yes it is, thank you.

**THE COURT:** And you would like to represent yourself in the termination of parental rights case?

- 5 -

[**MOTHER**]:     Yes I would. . . .

**THE COURT:**     Now the other thing I want to do on the record, I'll indicate that you satisfied me that you understand the proceedings, you understand your right to an attorney and that you are making a conscious and knowing decision to elect to represent yourself.

N.T., 4/12/2019, at 8-9, 12-13. The trial court also entered written orders at both docket numbers and instructed the Clerk of Courts to transmit the order for No. 108-16 to this Court.

On June 19, 2019, this Court dismissed Mother's appeal from underlying Docket No. 108-16 (Superior Court Docket Number 3136 EDA 2018), because Mother failed to file a brief, despite the trial court's warning that a brief was due in the appeal. N.T., 4/12/2019, at 9.

The [termination] hearing, together with the next dependency review hearing reconvened on September 4, 2019. . . . The evidence presented over the course of the three-day [termination] hearing, as well as intervening permanency hearings, was reminiscent of A.O.'s case and tracked and confirmed the evidence presented during the goal change hearing.

Trial Court Opinion, filed November 26, 2019, at 10.

On September 4, 2019, the trial court entered an order terminating Mother's parental rights to Child at No. 48-18 and a second order continuing Child's dependency and placement in his pre-adoptive foster home at No. 108-16. On October 3, 2019, Mother filed timely notices of appeal at both docket numbers, each with its own statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(a)(2)(i), (b).

Mother's Rule 1925(b) statement for No. 108-16 was four pages in length and enumerated five issues. Her Rule 1925(b) statement for No. 48-18 listed 28 issues across 23 pages, with some issues including up to 17 sub-claims. In its entirety, the first issue was:

> **1.) Question of Motive:** It is important to note the venue of this case has been that of the Orphan's Court, although it has not been presided over by the Judge assigned to said court. However the crux of the issue with this case and the choice of court is stupefying in so much as the Children and Youth Services who prompted this case and are alleging their concern for the wellbeing of the Child in question and yet have placed "In rem" the Child's Living Estate (the funds in this case having been received solely from the Social Security Department ) over the welfare and humanity of the Child in question. The source of the Orphans' Court's jurisdiction being solely the money – the "Estate" of the alive or dead person at issue.

Statement of Errors, No. 48-18, 10/3/2019, at 2 ¶ 1.

On November 4, 2019, this Court consolidated both appeals. The trial court submitted a Rule 1925(a) opinion, which attempted to address both No. 108-16 and No. 48-18 on the merits but also urged us to find waiver based upon the "rambling" nature of Mother's Rule 1925(b) statements. Trial Court Opinion, filed November 26, 2019, at 1. The trial court opinion did not address whether the court believed that Mother's Rule 1925(b) statements were filed in bad faith. *See id.* at 14-19.

Preliminarily, before we can reach the trial court's request that we find Mother's appellate challenges to be waived or reach the merits of those challenges, we must first determine whether the trial court properly allowed Mother to proceed *pro se*. "Parents in involuntary termination proceedings

have a constitutionally-protected right to counsel." **In re C.A.S.**, 166 A.3d 353, 356 (Pa. Super. 2017). In **In re X.J.**, 105 A.3d 1, 4 (Pa. Super. 2014), this Court analogized the right to counsel in a termination proceeding to that of the right to counsel in a proceeding pursuant to the Post Conviction Relief Act ("PCRA").[1] This Court noted that, during a PCRA matter, "when a party 'was denied [his] right to counsel—**or failed to properly waive that right**—this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake.' **Commonwealth v. Stossel**, 17 A.3d 1286, 1290 (Pa. Super. 2011)." **X.J.**, 104 A.3d at 4. In **Stossel**, 17 A.3d at 1290, this Court stated that it is necessary for the lower court to conduct a hearing to determine if the party were "knowingly, intelligently, and voluntarily waiving his right to counsel." In doing so, the court must ascertain if the party "understands: (1) his right to be represented by counsel; (2) that if he waived this right, he will still be bound by all normal procedural rules; and (3) that many rights and potential claims may be permanently lost if not timely asserted." **Id.** at 1289.

Applying this framework for determining proper waiver of counsel in a PCRA action, **id.**, to the current termination of parental rights appeal, we find that the trial court did ascertain that Mother understood that she had the right to be represented by counsel, N.T., 4/12/2019, at 8, that she would still be

---

[1] 42 Pa.C.S. §§ 9541–9546.

bound by all normal procedural rules despite being *pro se*, **id.** at 9, and that she needed to make timely objections in order to prevent potential claims from being lost, **id.** at 12. Accordingly, Mother's waiver of her right to counsel was knowing, intelligent, and voluntary, and, consequently, the trial court's decision to allow Mother to proceed *pro se*, **id.** at 13, was properly granted. **See X.J.**, 104 A.3d at 4; **Stossel**, 17 A.3d at 1290.

Next, we consider whether Mother, as a *pro se* appellant, adhered to our Rules of Appellate Procedure. "*Pro se* status does not relieve [an appellant] of his duty to follow the Rules of Appellate Procedure." **Commonwealth v. Vurimindi**, 200 A.3d 1031, 1037 (Pa. Super. 2018), *reargument denied* (February 6, 2019), *appeal denied*, 217 A.3d 793 (Pa. 2019), *cert. denied*, No. 19-6894, 2020 WL 873220 (U.S. February 24, 2020).

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. Accordingly, *pro se* litigants must comply with the procedural rules set forth in the Pennsylvania Rules of Court; if there are considerable defects, we will be unable to perform appellate review.

**Id.** at 1037-38 (internal citations and quotation marks omitted). When an appellant ignores the Rules, thereby "thwart[ing] appellate review[,] . . . the only appropriate remedy is waiver of all issues" and dismissal of the appeal. **Id.** at 1043.

Hence, we turn to Pa.R.A.P. 1925 to determine whether Mother has waived all issues for appeal based upon deficient Rule 1925(b) statements, as the trial court encouraged us to do. Trial Court Opinion, filed November 26, 2019, at 1.

> The fact th[at an appellant] filed a timely 1925(b) statement does not automatically equate with issue preservation. . . . [T]he Pa.R.A.P. 1925(b) statement must be sufficiently "concise" and "coherent" such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith. . . . [A] Rule 1925(b) statement is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal. A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all. Even if the trial court correctly guesses the issues appellants raise on appeal and writes an opinion pursuant to that supposition the issues [are] still waived.

*Vurimindi*, 200 A.3d at 1038 (internal brackets, citations, and quotation marks omitted) (emphasis added). As the Rule itself explains:

> The Statement shall set forth only those errors that the appellant intends to assert. . . .

> The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

Pa.R.A.P. 1925(b)(4)(i), (iv).

In the current case, Mother's Rule 1925(b) statement for No. 108-16 is arguably "concise" and "coherent," listing only five issues across four pages that specifically challenge the credibility and veracity of CYS caseworkers and the propriety of Child's original removal. Statement of Errors, No. 108-16,

- 10 -

10/3/2019, at 2-4. Ergo, we disagree with the trial court that the issues raised in Mother's Rule 1925(b) statement for No. 108-16 should be waived. *See Vurimindi*, 200 A.3d at 1038.

Nonetheless, Mother's Rule 1925(b) statement for No. 48-18 cannot be considered "concise" -- it is 23 pages in length and raises 28 distinct issues, some of which have sub-claims, including one with 16 sub-claims and another with 17 sub-claims. Statement of Errors, No. 48-18, 10/3/2019, at 2-22 ¶¶ 1-28. Albeit that the total number of errors raised alone cannot be grounds for finding waiver, Pa.R.A.P. 1925(b)(4)(iv), Mother's challenges cannot be considered "coherent," either; for example, we cannot discern what issue Mother is trying to raise her first claim, which appears in its entirety above. Statement of Errors, No. 48-18, 10/3/2019, at 2 ¶ 1. Mother seems to be accusing CYS of stealing Child's money and questioning the Orphans' Court's jurisdiction to hear a termination of parental rights action, but we are merely guessing. Nevertheless, her next issue is entitled "Improper Jurisdiction," *id.* at 2 ¶ 2, which would mean that, if she were challenging jurisdiction in her first issue, then her issues are redundant, which they are not permitted to be. Pa.R.A.P. 1925(b)(4)(iv). All of Mother's other issues in her Rule 1925(b) statement for No. 48-18 are likewise incoherent and/or redundant.

Yet, there is no evidence that Mother acted in "bad faith" when she filed her inarticulate Rule 1925(b) statement in No. 48-18. *See Vurimindi*, 200 A.3d at 1038. In *Vurimindi*, the appellant was a "well-educated individual

with a master's degree" who thereby could not "plead ignorance." *Id.* at 1042 (citation to the record and internal brackets omitted). Additionally, the appellant had already been warned by the trial court that there were issues that he could not raise on direct appeal, such as ineffective assistance of counsel, but that he "deliberately raised" anyway. *Id.* Also, when the trial court gave the appellant "a second opportunity to comply with Rule 1925(b)[,] . . . [i]nstead of being more concise, [the appellant] added 8 more issues to his already voluminous list of alleged errors." *Id.* at 1040. For these reasons, this Court concluded that the appellant in *Vurimindi* acted in bad faith and "conclude[d] that the only appropriate remedy is waiver of all issues." *Id.* at 1043.

As noted above, the trial court in the current action did not inquire into whether Mother acted in bad faith when she filed her voluminous Rule 1925(b) statement in No. 48-18. *See* Trial Court Opinion, filed November 26, 2019, at 1, 12-19. However, we find that none of the circumstances that lead this Court to find that the appellant in *Vurimindi* had acted in bad faith apply to the current appeal. Unlike the appellant in *Vurimindi*, Mother is not "well-educated" but, instead, only has a high school diploma. *Compare* 200 A.3d at 1042 *with* N.T., 4/12/2019, at 9. Also unlike in *Vurimindi*, there is no indication in the record that Mother had previously been warned that any of her issues were impermissible on appeal, and the trial court did not give Mother the opportunity to submit a revised Rule 1925(b) statement for No.

48-18. *See* 200 A.3d at 1040, 1042. Therefore, in contrast to *Vurimindi*, *id.* at 1043, we cannot determine that Mother acted in bad faith when she filed her voluminous and rambling Rule 1925(b) statement, and, thus, we will not find waiver of all issues at No. 48-18.

Although Mother's Rule 1925(b) statements do not demand waiver, her consolidated appellate brief fails to adhere to any of our Rules of Appellate Procedure to the degree that we are unable to perform appellate review. *Vurimindi*, 200 A.3d at 1038.

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our [Supreme] Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.

*Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011). According to Pa.R.A.P. 2111(a)(1)-(11):

> The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:
>
> (1) Statement of jurisdiction.
>
> (2) Order or other determination in question.
>
> (3) Statement of both the scope of review and the standard of review.
>
> (4) Statement of the questions involved.
>
> (5) Statement of the case.
>
> (6) Summary of argument.

(7) Statement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence, if applicable.

(8) Argument for appellant.

(9) A short conclusion stating the precise relief sought.

(10) The opinions and pleadings specified in paragraphs (b) and (c) of this rule.

(11) In the Superior Court, a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Pa.R.A.P. 1925(b), or an averment that no order requiring a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was entered.

Mother's brief lacks the sections described in Pa.R.A.P. 2111(a)(1)-(6).[2]

Instead, she leaps straight into her argument pursuant to Pa.R.A.P. 2111(a)(8). Mother's Brief at 2-40. While the brief does not include a separate heading for her conclusion, the penultimate paragraph of her argument begins "In Conclusion" and her final paragraph states the relief that she is seeking, *id.* at 41; her brief therefore arguably satisfies Pa.R.A.P. 2111(a)(9). While the brief includes the trial court opinion, thus fulfilling Pa.R.A.P. 2111(a)(10), she did not attach her Rule 1925(b) statements as required by Pa.R.A.P. 2111(a)(11).

This Court has refused to review appeals where an appellant's brief is missing fewer sections than Mother's. *See, e.g.*, *Commonwealth v. Spuck*, 86 A.3d 870 (Pa. Super. 2014) (quashal where *pro se* brief lacking requiring statement of jurisdiction to hear the appeal and statement of the questions

_____

[2] Pa.R.A.P. 2111(a)(7) is inapplicable.

- 14 -

involved stating concisely the issues to be resolved); *Commonwealth v. Rivera*, 685 A.2d 1011 (Pa. Super. 1996) (appellant failed to provide brief which would allow meaningful judicial review, where brief did not include statement of scope and standard of review, order or determination sought to be reviewed, summary of argument, and copy of lower court opinion; appeal therefore quashed); *Commonwealth v. Maris*, 629 A.2d 1014, 1015-16 (Pa. Super. 1993) (appeal quashed where brief "contain[ed] no statement of jurisdiction, order, or other determination in question, summary of argument or statement of the questions involved"; brief thus violated the Pennsylvania Rules of Appellate Procedure to a degree that precluded us from conducting meaningful review of claims). This Court has found the lack of a statement of questions involved to be particularly egregious. *Smathers v. Smathers*, 670 A.2d 1159, 1160 (Pa. Super. 1996) ("the omission of a statement of questions presented is particularly grievous since the statement defines the specific issues this court is asked to review"; quashing *pro se* appeal); *Maris*, 629 A.2d at 1016 (this Court is not obliged to consider any of appellants' arguments where none of those arguments were set forth in a statement of questions involved).

Given that Mother's brief is so deficient, lacking so many required sections, including the grievous omission of a statement of questions involved, we are unable to conduct meaningful judicial review; thus, we are compelled to quash Mother's appeals. *See* Pa.R.A.P. 2111(a)(1)-(6), (11); *Spuck*, 86

- 15 -

A.3d 870; ***Rivera***, 685 A.2d 1011; ***Smathers***, 670 A.2d at 1160; ***Maris***, 629 A.2d at 1015-16.

Assuming the absence of majority of the required sections under Pa.R.A.P. 2111(a) from Mother's brief did not entirely preclude our ability to provide meaningful judicial review of Mother's claims, Mother's brief is also flawed, because she fails to state the place of raising or preserving any of her challenges before the trial court, in violation of Pa.R.A.P. 2119(e). Given that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[,]" Pa.R.A.P. 302(a), Mother is required to have raised her issues below in order for this Court to be able to review them. Nonetheless, we have been unable to discern any place in the record where Mother raised many of her appellate issues -- including but not limited to claims relating to discovery, warrantless entry, estoppel, the Adoption and Safe Families Act ("ASFA"), and alleged bad faith by CYS – before the trial court. ***See*** Mother's Brief at 2-4 (discovery), 8-12 (warrant), 13-15 (estoppel), 30-38 (ASFA), 39-40 (bad faith).

In fact, not only does Mother's brief fail to state where she raised or preserved her challenges, it fails to provide any citations as to where any of

the facts she alleges were established by evidence of record,[3] in violation of Pa.R.A.P. 2117(a)(4) and 2119(c)-(d).

The statement of the case shall contain . . .

A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found.

Pa.R.A.P. 2117(a)(4).

**(c) Reference to record.**  If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* Pa.R.A.P. 2132).

**(d) Synopsis of evidence.**  When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found.

Pa.R.A.P. 2119(c)-(d).

Where an appellant's brief fails to cite any evidence in support of a claim, we shall not become the appellant's advocate and "scour the record to find evidence to support an argument"; instead, we will deem that claim waived. *Wolf v. Santiago*, 2020 PA Super 47, *11 (filed March 3, 2020); *see Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018) (citing Pa.R.A.P. 2119(d)), *reargument denied* (January 29, 2019), *appeal denied*,

---

[3] Although Mother attached some exhibits to her brief and then cited to those exhibits therein, she failed to demonstrate that these exhibits were ever admitted into evidence before the trial court.  ***See, e.g.***, Mother's Brief at 2, 14-15, 17, 26.

217 A.3d 180 (Pa. 2019); *see also **J.J. DeLuca Co. v. Toll Naval Associates***, 56 A.3d 402 (Pa. Super. 2012) (appellant waived claim where appellant did not present any citation to the record to support the claim nor show how appellee's evidence was deficient). Thus, by failing to cite to the record anywhere in her brief, Mother has failed to preserve any of the issues raised therein.

\* \* \*

In general, "[a] decision to terminate parental rights [is] never to be made lightly or without a sense of compassion for the parent," ***In re Adoption of S.P.***, 47 A.3d 817, 827 (Pa. 2012), and we are particularly loath to quash an appeal from a matter as consequential and life-altering as a termination of parental rights on technical, procedural grounds. ***See In re M.P.***, 204 A.3d 976, 981 (Pa. Super. 2019) ("We recognize the harsh – perhaps draconian – consequence of quashing any appeal, and in particular an appeal involving a party's parental rights.").

Nevertheless, even if we were to jettison all of our Rules of Appellate Procedure due to Mother's *pro se* status, the inadequacies of Mother's brief still could not be remedied. The ultimate problem is that Mother's brief is so disjointed and inarticulate that it is impossible for us to discern what Mother's challenges even are, beyond of the broadest of brushstrokes.

For the reasons given above, we are compelled to quash both of Mother's appeals.

Appeals quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/20